# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# WAYCROSS DIVISION

LOUIS LOUIDOL,

    Petitioner,

v.

TRACY JOHNS, Warden,

    Respondent.

CIVIL ACTION NO.: 5:17-cv-42

## **ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Petitioner Louis Louidol ("Louidol"), who is currently housed at D. Ray James Correctional Facility in Folkston, Georgia, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. 1.) Respondent filed a Response, and Louidol filed a Reply. (Docs. 8, 9.) For the reasons which follow, I **RECOMMEND** that the Court **DISMISS without prejudice** Louidol's Petition, **DIRECT** the Clerk of Court to **CLOSE** this case, and **DENY** Louidol *in forma pauperis* status on appeal.

## **BACKGROUND**

On April 13, 2001, the United States District Court for the Middle District of Florida sentenced Louidol to a 109-month term of imprisonment, which was later reduced to a 97-month sentence, for conspiracy to possess with intent to distribute 500 grams or more of cocaine and possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii), and 846. (Doc. 8-1, pp. 3, 9–18.) During this time, it appears Florida state authorities had primary jurisdiction of Louidol for various state crimes, but Louidol was in

federal custody pursuant to a writ of habeas corpus *ad prosequendum*. (Id. at pp. 2–3.)[1] At his sentencing hearing, the Middle District of Florida remanded Louidol to the custody of the United States Marshal. (Id. at p. 13.) It appears Louidol was then transferred to state authorities for adjudication on his state charges.

Subsequently, on May 14, 2001, a Florida state court in Pinellas County sentenced Louidol to a 10-month and 4-day term of incarceration for misdemeanor state charges. (Id. at pp. 3, 20–21, 24–25.) However, the court credited Louidol with 304 days of "time served" and, apparently, thereafter released him into the custody of authorities in Hillsborough County, Florida, regarding other state charges. (Id. at pp. 3, 20–21, 28–29.)[2] On October 24, 2001, Hillsborough County dismissed the charges but apparently erroneously released Louidol to agents of the Bureau of Immigration and Customs Enforcement ("ICE"). (Id.)

It appears an immigration judge then ordered Louidol's removal from the United States of America. (Id. at p. 31.)[3] Thus, on January 4, 2002, the Acting District Director of the Immigration and Naturalization Services ("INS"), on behalf of the Attorney General of the United States, commanded Louidol's removal from the United States. (Id.) On March 25, 2002, INS officials deported Louidol to Haiti from the Sarasota, Florida Airport. (Id. at pp. 3, 32.)

---

[1] The Court takes this fact from the affidavit attached to Respondent's Response. Respondent does not attach any documentation evidencing Louidol's original arrest or the writ of habeas corpus *ad prosequendum*. If the Court were to delve into the merits of Louidol's claims, the Court would need the benefit of the paperwork surrounding Louidol's arrest and various transfers, at a minimum.

[2] The documentation Respondent provides regarding this transfer and Hillsborough County State Court case is far from clear. The defendant listed in the documentation provided by Respondent is "Marcel, Maxime." (Doc. 8-1, p. 28.) If the Court were to delve into the merits of Petitioner's claims, it would need more information regarding his transfer to Hillsborough County officials and his detention during that time.

[3] In the documentation provided by Respondent, the alien's name is listed as "Louis, Liquidor," rather than "Louidol, Louis." (Dc. 8-1, pp. 31–32.)

On August 26, 2014, following his return to the United States, INS officials and agents with the Department of Homeland Security arrested Louidol for failure to report for service of his federal sentence. (Id. at pp. 3–4.) The charges were dismissed, and Louidol was turned over to the Federal Bureau of Prisons ("BOP") on October 2, 2014, to begin serving his sentence obtained in the Middle District of Florida. (Id. at pp. 3–4, 10–11.) The BOP prepared a sentence computation for Louidol and credited him with 315 days' prior custody. The 315 days were calculated based on the period from when the Pinellas County court credited Louidol with "time served" until ICE official deported Louidol to Haiti (May 15, 2001, to March 25, 2002). (Id.)

Louidol previously filed a habeas Petition in this Court alleging that the BOP improperly credited his time served and should have also included twenty-five months he spent at the Haiti National Penitentiary and the ten-month, four-day term at Pinellas County. Brief, Louidol v. Johns, Case No. 5:16-cv-14, ECF No. 3 (S.D. Ga. April 7, 2016). This Court dismissed that Petition because Louidol failed to properly exhaust D. Ray James administrative remedies prior to filing his Petition. Order, Louidol v. Johns, Case No. 5:16-cv-14, ECF No. 16 (S.D. Ga. September 7, 2016).

In his current Petition, Louidol again alleges that the BOP has improperly calculated his sentence. However, different than his prior Petition, he now alleges that the BOP should have given him credit for all of the years between his March 25, 2002 deportation to Haiti and his August 26, 2014 detention in the United States, including time that he spent at liberty. (Doc. 1.) Louidol explains that he truly never left the custody of the United States Marshal prior to his deportation, and that he was improperly deported to Haiti due to federal officials' negligence and not due to any mistake of his own. (Id.)

Respondent argues that the Court should not reach the merits of Louidol's Petition because he has failed to exhaust his administrative remedies on these expanded claims. (Doc. 8.) Respondent contends that while Louidol has filed grievances requesting that he be given credit for the time he spent in the Haiti National Penitentiary following his deportation, he has not properly exhausted the much broader claims he presents in this Petition. (Id. at pp. 5–8.) Additionally, Respondent contends that if the Court does reach the merits of Louidol's claims, it should reject those claims. (Id. at pp. 8–11.)

## DISCUSSION

### I. Whether Louidol Exhausted his Administrative Remedies

#### A. Legal Requirements for Exhaustion

The Eleventh Circuit has held that a Section 2241 petitioner's failure to exhaust administrative remedies is not a jurisdictional defect. Santiago-Lugo v. Warden, 785 F.3d 467, 474 (11th Cir. 2015); see also Fleming v. Warden of FCI Tallahassee, 631 F. App'x 840, 842 (11th Cir. 2015) ("[Section] 2241's exhaustion requirement was judicially imposed, not congressionally mandated, and . . . nothing in the statute itself support[s] the conclusion that the requirement [is] jurisdictional."). Nevertheless, the Eleventh Circuit has noted "that the exhaustion requirement is still a requirement and that courts cannot 'disregard a failure to exhaust . . . if the respondent properly asserts the defense.'" Id. (citing Santiago-Lugo, 785 F.3d at 475). Failure to exhaust administrative remedies is an affirmative defense and inmates are not required to specially plead or demonstrate exhaustion in their complaint. Jones v. Bock, 549 U.S. 199, 216 (2007). However, the normal pleading rules still apply, and dismissal is appropriate when an affirmative defense appears on the face of a complaint—making it clear that a prisoner cannot state a claim for relief. Id. at 214–15. Thus, when a party admits in his

complaint or petition that he has not exhausted the grievance process, dismissal is warranted. See Okpala v. Drew, 248 F. App'x 72 (11th Cir. 2007); Cole v. Ellis, No. 5:10-CV-00316-RS-GRJ, 2010 WL 5564632, at *3 (N.D. Fla. Dec. 28, 2010); Rashid v. Liberty Cty. Jail, CV410-092, 2010 WL 3239241, at *1 n.1 (S.D. Ga. May 3, 2010) ("Nothing in Jones . . . forbids the Court from dismissing a complaint pursuant to [42 U.S.C.] § 1997e(a) if it is clear from the face of the complaint that the prisoner has not exhausted all administrative remedies available to him.").

The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)). Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93 (2006).[4]

The Supreme Court has noted exhaustion must be "proper." Id. at 92. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. In other words, an institution's requirements define what is considered exhaustion. Jones, 549 U.S. at 218. It is not the role of the court to

---

[4] Although Woodford was a civil rights suit rather than a habeas petition, the Court "noted that the requirement of exhaustion is imposed by *administrative law* in order to ensure that the agency addresses the issues on the merits." Fulgengio v. Wells, CV309-26, 2009 WL 3201800, at *4 (S.D. Ga. Oct. 6, 2009) (emphasis in original) (quoting Woodford, 548 U.S. at 90) (internal punctuation omitted). Thus, exhaustion requirements are applicable to habeas petitions.

consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). The court's focus should be on what remedies are available and whether the inmate pursued these remedies prior to filing suit. Id.

Thus, under the law, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the agency's administrative grievance process. Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA [Prison Litigation Reform Act], prisoners must 'properly take each step within the administrative process.'") (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005)); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

### B. Standard of Review for Exhaustion

"Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Bryant, 530 F.3d at 1374 (internal punctuation and citation omitted). Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id. In these instances, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Id. at 1376.

In Turner v. Burnside, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit set forth a "two-step process" that lower courts must employ when examining the issue of exhaustion of administrative remedies. First, the court is to take the plaintiff's version of the facts regarding

exhaustion as true. Id. at 1082. If, even under the plaintiff's version of the facts, the plaintiff has not exhausted, the complaint must be dismissed. Id. However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true. Id. Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]" Id. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083. The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. See Bryant, 530 F.3d at 1376–77.

### C. Analysis of Plaintiff's Efforts at Exhaustion

Inmates at D. Ray James must exhaust their administrative remedies by beginning a grievance process locally through the contractor's grievance procedures. (Doc. 8-1, pp. 4–5.) This involves an attempt at informal resolution, which, if unsuccessful, is followed by a formal complaint via a Step 1 administrative remedy form. (Id.) If the inmate is not satisfied with the resolution of the formal complaint, the inmate may appeal the Step 1 administrative remedy to the Warden via a Step 2 administrative remedy form. (Id. at p. 5.) If the inmate is unsatisfied with the Warden's response to the Step 2 administrative remedy on a BOP related matter (which includes sentencing), he must then appeal to the BOP's Administrator of the Privatization Management Branch via a BOP Administrative Remedy Form, BP-230(13), also known as a BP-10 form. (Id.) If the inmate is not satisfied with the Administrator's response, the inmate may make a final appeal to the BOP's Office of General Counsel. (Id.) If an inmate files an

administrative remedy form concerning a BOP-related matter,[5] the BOP's SENTRY computer database will record it. (Id. at p. 6.)

The evidence before the Court reveals that Louidol only pursued the administrative remedy process as to his request that he be given credit for the time he spent in jail in Haiti following his deportation and his request that he be transferred to another facility. (Id., at pp. 41–50.)[6] At no point in the administrative remedy process, did Louidol present the claims that he advances in this case: that he should be given credit for all of the time that he spent in Haiti because he was improperly deported due to the negligence of the United States and no fault of his own. Rather, he limited his claims to his request for "foreign jail credit" as well as a separate request that he be transferred to a facility closer to home. (Id. at pp. 43, 48, 50.)

The distinction between Louidol's request for foreign jail credit and his request to receive credit for all of the time following his deportation is a distinction with significant difference. In his claim for foreign jail credit, Louidol only seeks approximately twenty-five months credit towards his sentence. In his claim for all of the time following his deportation, he seeks more than twelve years of such credit. While his request for foreign jail credit required the BOP to investigate the facts surrounding Louidol's alleged detention in Haiti, his request for all of the time following his deportation would require an investigation into the facts and circumstances surrounding his removal from the United States. Moreover, the underlying rationale and legal analyses for these two claims differ greatly. Therefore, Louidol's grievances did not provide the

---

[5] Examples of BOP-related issues are classification, designation, sentence computation, and removal or disallowance of good conduct time. (Doc. 8-1, p. 39.)

[6] The BOP denied Petitioner foreign jail credit because staff at the U.S. Embassy in Port-Au-Prince, Haiti reported that the Haitian National Police had no record of Louidol's incarceration in Haiti and no record of the prison official Louidol claimed could verify his incarceration. (Doc. 8-1, pp. 47, 52–55.) In addition, Embassy staff stated the document Petitioner provided to the BOP verifying his incarceration in Haiti was most likely a forgery. Id.

8

BOP with fair notice and a sufficient opportunity to address the claims that he raises in this action, and the purposes of requiring Louidol to exhaust his administrative remedies prior to seeking relief from this Court have not been met. See Woodford, 548 U.S. at 93; Green, 212 F. App'x at 871.

In his Reply, Louidol seems to admit that he did not exhaust all his administrative remedies. (Doc. 9.) He does not address Respondent's exhaustion arguments at all. (Id.) Rather, he only focuses on the merits of his underlying claims. (Id.) Thus, the Court need not proceed to the second step of the Turner analysis. However, even if the Court were to proceed to the second step, the records that Respondent provides regarding Louidol's efforts at exhaustion appear more credible than any conclusory allegation to the contrary that Louidol has raised.

Therefore, it is apparent that Louidol failed to properly exhaust his available administrative remedies prior to filing this Petition. Consequently, the Court should **DISMISS without prejudice** Louidol's Petition.[7]

---

[7] If the Court were to address the merits of Louidol's Petition, that inquiry appears to be more complicated than Respondent's brief suggests. Respondent contends that the case is controlled by United States v. Barfield, 396 F.3d 1144, 1147–48 (11th Cir. 2005). However, this case differs from Barfield in several respects. For one, as the Eleventh Circuit noted in Barfield, the rule applied was "particularly appropriate" because the defendant in that case was instrumental in bringing about the delay in the service of her sentence. 396 F.3d at 1148 n. 3. Here, Louidol was apparently deported due to no fault of his own. Moreover, the Eleventh Circuit specifically declined to address the situation where a defendant is incarcerated, released in error, and then reincarcerated. 396 F.3d at 1148, n 6. The defendant in Barfield was on bond during her prosecution and while awaiting sentencing. Here, Petitioner was in the custody of the United States during his criminal proceedings (albeit, perhaps, secondary to state custody), he was remanded to the custody of the United States Marshal by his federal sentencing judge, he was placed in the custody of the United States for immigration proceedings, and he was ordered removed from the United States by federal officials on behalf of the Attorney General of the United States. Additionally, the Eleventh Circuit in Barfield emphasized that the defendant had not yet served "any part of her sentence." 396 F.3d at 1147–48. While Louidol had not yet been received in a BOP facility, he had been in the custody of the United States prior to his deportation, and the BOP has given him credit toward his federal sentence for that time in custody. Thus, while his sentence may not have "commenced" under the BOP's regulations, there is an argument that he had served a "part of [his] sentence" prior to his release. These issues may be affected by the needed additional documentation noted above in the Background section. All of this is not to say that Louidol is entitled to credit towards his sentence for the time following his deportation. The Court need not and does not express any opinion on the merits of that

9

## II. Leave to Appeal *in Forma Pauperis*

The Court should also deny Louidol leave to appeal *in forma pauperis*. Though Louidol has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed"). An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). An *in forma pauperis* action is frivolous, and thus not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Given the above analysis of Louidol's Petition and Respondent's Response, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** *in forma pauperis* status on appeal.

---

issue at this time. Those claims should be addressed by the BOP in the administrative process. However, that inquiry appears to be less straightforward than Respondent's brief intimates.

**CONCLUSION**

Based on the foregoing, I **RECOMMEND** that the Court **DISMISS without prejudice**, Louidol's Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2241, (doc. 1), and **DIRECT** the Clerk of Court to **CLOSE** this case. I further **RECOMMEND** that the Court **DENY** Louidol leave to proceed *in forma pauperis*.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon Louidol and Respondent.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 18th day of January, 2018.

_____
R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA